IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**JJ RENDON & ASSOCIATES
STRATEGIC CREATIVITY, LLC**,
a Florida Limited Liability Company,
**JUAN JOSÉ RENDÓN DELGADO,**
an individual,

    Plaintiff,                                        **JURY TRIAL DEMANDED**

-v-

**ROBERTO ARZU**,

    Defendant.

_____/

## COMPLAINT

Plaintiffs, JJ Rendon & Associates Strategic Creativity, LLC ("JJ Rendon & Associates") and Juan José Rendón Delgado ("Mr. Rendon") sue Defendant Roberto Arzu ("Defendant") as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action because the matter in controversy exceeds $75,000 (exclusive of interest and costs) and is between a plaintiff who is a citizen of Florida and a defendant who is a resident and citizen of a state other than Florida. *See* 26 U.S.C. § 1332.

2. This Court has personal jurisdiction over Defendant because he has committed tortious acts within the state causing injuries within the state. *See* Fla. Stat. § 48.193(1)(a)(2).

3. Venue is proper in this judicial district because this is where the cause of action described herein accrued.

### II. THE PARTIES

4. Plaintiff JJ Rendon & Associates is a Florida limited liability company with its principal place of business in Miami, Florida.

5. Plaintiff Mr. Rendon is a citizen of the State of Florida.

6. Defendant Roberto Arzu is a citizen of the country of Guatemala or of a state other than Florida. Arzu is currently a candidate for the presidency of Guatemala.

### III.   FACTUAL BACKGROUND

7. This case arises out of Defendant's defamation of Plaintiffs.

8. Plaintiff JJ Rendon & Associates is a Florida limited liability company that provides, among other things, political strategy, crisis management and conflict resolution.

9. JJ Rendon & Associates is headed by Plaintiff Mr. Rendon, a political strategist in Latin America and throughout the world who has advised on more than 5,000 campaigns at the state and local levels, including 41 successful presidential elections. Among others, he was the strategist for Presidents Rafael Caldera and Carlos Andrés Pérez in Venezuela, Juan Orlando Hernández and Porfirio Lobo in Honduras, Álvaro Uribe and Juan Manuel Santos in Colombia, and President Enrique Peña Nieto in Mexico. Mr. Rendon is also an activist for democracy and human rights, for which he has been recognized by not only the Venezuelan community but also the Hispanic community at large. His work has earned him the keys to the City of Doral in Miami-Dade County, Florida, a day of recognition in his honor in Homestead, Florida, four doctorates "Honoris Causa" from a number of Latin American universities; and recognition by the Honduran government, the United States Congress, and the École Supérieure Internationale de Bruxelles, among others.

10. In February of 2016, Defendant signed a contractual agreement (the "Contract") with JJ Rendon & Associates pursuant to which Defendant agreed to pay more than $5 Million for

a variety of services, including consulting relating to Defendant's political campaign for the presidency of the Republic of Guatemala. *See* **Exhibit "A"**.

11. On November 15, 2016, JJ Rendon & Associates initiated a lawsuit against Defendant for breach of contract arising out of Defendant's failure to pay JJ Rendon & Associates the agreed to amounts due under the terms of the Contract (the "Prior Lawsuit"). *See JJ Rendon & Associates Strategic Creativity, LLC, v. Roberto Arzu*, Case No. 2016-029497 CA 01.

12. The court in the Prior Lawsuit ultimately entered Final Judgment for JJ Rendon & Associates against Defendant, allowing JJ Rendon & Associates to recover over $5,500,000.00 in damages, plus interest. A true and correct copy of the Final Judgment is attached hereto as **Exhibit "B"**.

13. More recently, on April 23, 2019, the court in the Prior Lawsuit issued a Writ of Bodily Attachment for Defendant's failure to attend the court's April 17, 2019 show cause hearing. The Writ of Bodily Attachment provides as follows:

   a) Arzu is in ***civil contempt of Court*** by virtue of his failure to appear for the April 17, 2019 hearing as required by the Court's April 4, 2019 Order to Show Cause.
   b) The ***Sheriff shall take Arzu into custody***, if found in the State of Florida.
   c) The Sheriff shall produce Arzu before the Judge, and Arzu will be provided an opportunity to comply with this Court's April 4, 2019 Order to Show Cause, and otherwise purge himself of contempt.
   d) Arzu may purge his contempt by submitting to a deposition in aid of execution.

(emphasis added). A true and correct copy of the Writ of Bodily Attachment is attached hereto as **Exhibit "C"**.

14. Since the issuance of the Writ of Bodily Attachment, Defendant has given a number interviews to the Guatemalan press in which he has knowingly and falsely

3

#68501614_v1

misrepresented that no arrest order has been issued because the Prior Lawsuit was merely a "civil case" and that he abided by all of his obligations in the Prior Lawsuit.

15. Because Defendant is running for president of Guatemala, Defendant has also suggested in the interviews that the Writ of Bodily Attachment was somehow politically motivated and the doing of one of his political opponents, completely undermining the integrity of the proceedings and the Court in the Prior Lawsuit.

16. In addition to these troubling misrepresentations to the public, and more relevant to the cause of action raised herein, Defendant has made additional false and defamatory public statements to the press about Plaintiffs.

17. On April 24, 2019, for example, Defendant published the following false and defamatory statements during a televised interview conducted in Spanish with Noti 7, one of Guatemala's television news cycle programs. With the intent to defame Plaintiffs, Defendant falsely stated:

a) "This gentleman started a lawsuit three (3) years ago for work he never performed, I know honest people who charge for work they do, not for work they didn't do, but apparently this gentleman demands payment for work he didn't do..."

b) "A scandal with this gentleman was published by Bloomberg the most important magazine of the United States or one of the most important ones, saying that this gentleman dedicates himself to hacking elections, manipulating, blackmailing and extorting presidential candidates and presidents and has connection with drug trafficking."[1]

---

[1] Although Defendant conveniently failed to mention it in his interview, there is a pending lawsuit against Bloomberg for defamation in the United States District Court for the Southern District of Florida.

4

18. A video of the interview was then published on Noti 7's *publicly accessible* internet web page, which can be and has been accessed in Florida using the following link: http://www.chapintv.com/actualidad/roberto-arzu--nosotros-no-hemos-hecho-nada-indebido-221796.

19. On April 26, 2019, Defendant published additional false and defamatory statements during a televised interview conducted in Spanish with VEA Canal, another one of Guatemala's media outlets. With the intent to defame Plaintiffs, Defendant falsely stated that:

   a) Mr. Rendon dedicates himself to manipulating, blackmailing and extorting presidential candidates and even presidents.

   b) "[H]e has been accused of rape in Honduras."

   c) Mr. Rendon is "a gentleman who has hacked elections in Guatemala."

   d) "What is true is this is a scam. Honest people charged for work that has been done, scammers charge for things they didn't do."

20. Defendant then published a video of the interview with VEA Canal on his *publicly accessible* Facebook page, which can be and has been accessed in Florida using the following link: https://www.facebook.com/robertoarzugarciagranados/videos/vb.1911003529195315/817477385317394/?type=2&theater.

21. On or about this same time, Defendant held a *public* press conference wherein he stated, in reference to Mr. Rendon, that "his Modus Operandi is extorting and blackmailing people, especially political figures." Video clips from this press conference were published by a number of news outlets inside and outside of Guatemala. Notably, CNN has published a number of video clips from Defendant's press conference on its *publicly accessible* web page, which can be and has been accessed in Florida using the following links:

https://cnnespanol.cnn.com/video/guatemala-arzu-demanda-jj-rendon-intv-conclusiones-fernando-rincon/; https://cnnespanol.cnn.com/video/guatemala-mensaje-arzu-rendon-intv-conclusiones-fernando-rincon/; https://cnnespanol.cnn.com/video/guatemala-arzu-juez-sentencia-demanda-jj-rendon-intv-conclusiones-fernando-rincon/.

22.     A longer form video clip of the press conference was aired by another Guatemalan news program called TN 23, which Defendant thereafter published on his ***publicly accessible*** Facebook page, which can be and has been accessed in Florida using the following link: https://www.facebook.com/robertoarzugarciagranados/videos/316835238996941/.

23.     In addition, on or about June 4, 2019, Arzu took an interview with Proceso Digital, a news outlet operating out of Honduras, in which he asserted that Mr. Rendon "is a clown who has made a living through extortion and blackmail." Proceso Digital published this statement, likely with Arzu's consent since he agreed to the interview, in an article posted on its ***publicly accessible*** web page, which can be and has been accessed in Florida using the following link: https://www.proceso.hn/politica/18-politica/candidato-guatemalteco-arzu-cree-que-rendon-es-un-payaso-y-anuncia-demandas.html.

24.     The above four sets of defamatory statements will be referred to as the "Defamatory Statements."[2] The Defamatory Statements, which remain accessible online as of the date of the filing of this Complaint, collectively have been viewed over two thousand times, including in Florida. Indeed, Defendant's Facebook page indicates that the VEA Canal interview, alone, has been viewed over one thousand, two hundred times. And, Defendant's Facebook page indicates that his posting of TN 23's airing of the press conference has

---

[2] Plaintiff will file certified translations for all of the Defamatory Statements referenced herein following the commencement of this action.

garnered over one thousand, six hundred views. These viewership numbers likely pale in comparison to the number of views from the actual television broadcasts combined with the views from the news outlets' respective websites and from YouTube.

25. Defendant's Defamatory Statements are outrageous and lack any factual support. Mr. Rendon and JJ Rendon & Associates have offered services and advice to 41 presidential campaigns and their success is due to their dedication and commitment to quality, value, and positive results for their clients, in addition to their moral and ethical values and Mr. Rendon's respect for confidentiality and professionalism.

26. Defendant knows that his statements are not true and made them intentionally and with malice to harm the names and reputations of Plaintiffs.

27. Defendant's Defamatory Statements have caused substantial harm to Mr. Rendon's personal reputation and to JJ Rendon & Associates, including the potential of harming JJ Rendon & Associates' business opportunities and growth.

28. The amount of damages that Defendant has and will cause directly to Plaintiffs will be quantified with the assistance of experts in these proceedings. Nevertheless, it is estimated that those amounts will surpass hundreds of thousands of dollars, if not millions, exclusive of punitive damages, interests and attorney's fees.

29. Moreover, the Defamatory Statements have remained on Defendant's Facebook page, on YouTube, as well as on the web pages of various media outlets and continue to cause severe harm to Plaintiffs' business and reputations.

**COUNT I**
**DEFAMATION**
(*All Plaintiffs Against Defendant*)

Plaintiffs incorporate and re-allege the allegations and facts set forth in paragraphs 1 through 29 as if fully set forth herein.

30. Plaintiffs have enjoyed prestigious reputations in their line of business and in the community. Indeed, in the 30 years of their professional tenure, neither Mr. Rendon nor JJ Rendon & Associates has received any complaints from their clients.

31. By the conduct described above, Defendant published false and defamatory statements of fact to third parties assailing Plaintiffs and the manner in which they conduct business. Defendants' Defamatory Statements about Plaintiffs concerned, but were not limited to:

   a) Accusing JJ Rendon & Associates and/or Mr. Rendon of manipulating, blackmailing, and extorting presidential candidates and even presidents;

   b) Accusing JJ Rendon & Associates and/or Mr. Rendon of scamming or defrauding Defendant;

   c) Accusing JJ Rendon & Associates and/or Mr. Rendon of attempting to influence Guatemala's elections at the behest of Defendant's political opponents;

   d) Accusing JJ Rendon & Associates and/or Mr. Rendon of demanding payment for services they never performed;

   e) Accusing Mr. Rendon of hacking elections; and most egregiously of all,

   f) Propounding false and highly damaging accusations of sexual assault, directed at Mr. Rendon.

32. Defendant published the Defamatory Statements about Plaintiffs starting on or around April 24, 2019, through the present.

33. By publishing the Defamatory Statements through his public press conference, through the media, and on his own Facebook page, Defendant intended to communicate the false and defamatory statements to thousands of third parties, including parties in Florida.

34. The Defamatory Statements disseminated by Defendant are false because they have no factual support and neither JJ Rendon & Associates nor Mr. Rendon committed the acts alleged.

35. The Defamatory Statements are McCarthy-like attacks and are likely to prejudice Plaintiffs' business and damage their reputations in the community.

36. Defendant published and communicated the Defamatory Statements with actual malice. He knew or should have known that the Defamatory Statements were false when made, or did not exercise reasonable care in verifying the truth or falsity of such Defamatory Statements before transmitting and publishing them, or recklessly disregarded the truth or falsity of such Defamatory Statements. Defendant also omitted relevant and public information, including that there is a pending lawsuit for defamation against Bloomberg.

37. By publishing these Defamatory Statements through his public press conference, through the media, and on his own Facebook page, Defendant maliciously and intentionally published them in an effort to damage Plaintiffs' reputations and business and pecuniary interests.

38. The Defamatory Statements, for which no privilege applies, have and will cause substantial harm to Plaintiffs' business, including injuring their reputations in the community and harming Plaintiffs' business operations and opportunities. The Defamatory Statements have also caused Plaintiff Mr. Rendon pain and suffering.

39. Plaintiffs have and/or will suffer substantial damages as a direct and proximate result of Defendant's Defamatory Statements, including without limitation, loss of reputation, lost profits, and lost professional opportunities, as well as irreparable harm to their business

#68501614_v1

and personal reputations. Further, Defendant committed such acts maliciously, with ill will and with intent to damage Plaintiffs.

40. Plaintiffs, therefore, seek compensatory and punitive damages in an amount to be proven at trial, expected to exceed millions of dollars.

## COUNT II
## COMMERCIAL DISPARAGEMENT
(*JJ Rendon & Associates Against Defendant*)

JJ Rendon & Associates incorporates and re-alleges the allegations and facts set forth in paragraphs 1 through 29 as if fully set forth herein.

41. JJ Rendon & Associates has enjoyed a prestigious reputation in its line of business and in the community given the decades of its successes in Latin America.

42. By the conduct described above, Defendant published false and defamatory statements of fact to third parties assailing JJ Rendon & Associates and the manner in which it conducts business.

43. Defendant published the Defamatory Statements about JJ Rendon & Associates starting on or around April 24, 2019 through his own Facebook page, at least one televised press conference, two televised interviews with the media, and numerous videos of which were subsequently published on various internet news sites as well as YouTube.

44. By publishing these Defamatory Statements through his public press conference, through the media, and on his own Facebook page, Defendant intended to communicate the false and defamatory statements to thousands of third parties, including parties in Florida.

45. The Defamatory Statements disseminated by Defendant are false because they have no factual support and JJ Rendon & Associates did not commit the acts alleged.

46. The Defamatory Statements are of the sort that are likely to prejudice JJ Rendon & Associates' business and damage its reputation in the community.

47. Defendant published and communicated the Defamatory Statements with actual malice. He knew or should have known that the Defamatory Statements were false when made, or did not exercise reasonable care in verifying the truth or falsity of such Defamatory Statements before transmitting and publishing them, or recklessly disregarded the truth or falsity of such Defamatory Statements.

48. By publishing these Defamatory Statements through his public press conference, through the media, and on his own Facebook page, Defendant maliciously and intentionally published them in an effort to cause financial harm or losses to JJ Rendon & Associates.

49. The Defamatory Statements, for which no privilege applies, have caused substantial financial losses to JJ Rendon & Associates, including harming its business operations and opportunities.

50. JJ Rendon & Associates has and will suffer substantial damages as a direct result of Defendant's Defamatory Statements, including without limitation, loss of reputation, lost profits, and loss of professional opportunities.

51. Further, Defendant committed such acts maliciously, with ill will and with intent to damage JJ Rendon & Associates. JJ Rendon & Associates, therefore, reserves the right to seek an award of exemplary and punitive damages in an amount to be proven at trial.

## JURY DEMAND

52. Plaintiffs demand a jury trial.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendant for damages, attorney's fees, costs and such other relief as this Court deems just and proper. Plaintiffs also seek punitive damages.

Dated this 11th day of June, 2019.

>Respectfully submitted,
>
>HOLLAND & KNIGHT LLP
>*Attorneys for Plaintiffs*
>701 Brickell Avenue, Suite 3300
>Miami, FL 33131
>Tel: (305) 374-8500
>Fax: (305) 789-7799
>
>By: /s/ *Jesus E. Cuza*
>   Jesus E. Cuza, Esq.
>   Florida Bar No. 428991
>   Email: jesus.cuza@hklaw.com
>   Monica Vila Castro, Esq.
>   Florida Bar No. 22976
>   Email: monica.castro@hklaw.com
>   Alec M. Puig, Esq.
>   Florida Bar No. 1003509
>   Email: alec.puig@hklaw.com

#68501614_v1